| | |
|---|---|
| XAVIER BECERRA, State Bar No. 118517<br>Attorney General of California<br>PAUL STEIN, State Bar No. 184956<br>Supervising Deputy Attorney General<br>SHARON O'GRADY, State Bar No. 102356<br>Deputy Attorney General<br>S. MICHELE INAN, State Bar No. 119205<br>Deputy Attorney General<br>  455 Golden Gate Avenue, Suite 11000<br>  San Francisco, CA 94102-7004<br>  Telephone: (415) 510-3802<br>  Fax: (415) 703-5480<br>  E-mail: Michele.Inan@doj.ca.gov<br>*Attorneys for Defendant Robert P. David,<br>Director of California Office of Statewide<br>Health Planning and Development* | DOWNEY BRAND LLP<br>Annie S. Amaral (Bar No. 238189)<br>621 Capitol Mall, 18th Floor<br>Sacramento, CA 95814<br>Telephone: 916.444.1000<br>Facsimile: 916.444.2100<br>aamaral@downeybrand.com<br><br>Robert N. Weiner<br>Admitted *Pro Hac Vice*<br>Jeffrey L. Handwerker<br>Admitted *Pro Hac Vice*<br>R. Stanton Jones<br>Admitted *Pro Hac Vice*<br>ARNOLD & PORTER KAYE SCHOLER LLP<br>601 Massachusetts Avenue, NW<br>Washington, DC 20001<br>Telephone: (202) 942-5000<br>robert.weiner@arnoldporter.com<br>jeffrey.handwerker@arnoldporter.com<br>stanton.jones@arnoldporter.com<br><br>*Attorneys for Plaintiff Pharmaceutical Research<br>and Manufacturers of America* |

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| PHARMACEUTICAL RESEARCH AND MANUFACTURERS OF AMERICA,<br><br>                                  Plaintiff,<br><br>v.<br><br>ROBERT P. DAVID, in his official capacity as Director of the California Office of Statewide Health Planning and Development,<br><br>                                  Defendant. | 2:17-cv-02573-MCE-KJN<br><br>**JOINT STATUS REPORT AND REQUEST FOR SCHEDULING ORDER**<br><br>Courtroom: 7, 14th Floor<br>Judge: Honorable Morrison C. England, Jr.<br>Trial Date: Not Set<br>Action Filed: December 8, 2017 |

1

# INTRODUCTION

Plaintiff Pharmaceutical Research and Manufacturers of America ("PhRMA") filed this action on December 8, 2017, against defendants Edmund Gerald Brown, Jr., in his official capacity as Governor of the State of California and Robert P. David, in his official capacity as Director of the California Office of Statewide Health Planning and Development ("OSHPD"). On December 8, 2017, this Court entered an Initial Pretrial Scheduling Order. (ECF No. 5.) The Initial Pretrial Scheduling Order set forth a standard schedule for litigation activity, including deadlines for meeting and conferring pursuant to Rule 26(f) of the Federal Rules of Civil Procedure, a date for completion of non-expert discovery, deadlines relating to the designation of expert witnesses and expert discovery, and a deadline for bringing dispositive motions.

The deadlines in the Initial Pretrial Scheduling Order passed while two motions to dismiss filed by Defendants were pending, and the parties thus agree that an amended scheduling order is necessary. The parties have met and conferred on multiple occasions about what the terms of that order should be, but are not in agreement. Each side's position is set forth below.

# PLAINTIFF PHRMA'S POSITION

## A. PhRMA's Position Has Always Been that this Is a Purely Legal Case.

On January 26, 2018, Defendants filed a motion to dismiss Plaintiff's Complaint. (ECF No 19.) Prior to filing, Defendants disclosed to PhRMA their intention to move to dismiss the Complaint and proposed an enlarged briefing schedule and oversized briefs. PhRMA readily agreed to Defendants' request, but also explained its position that this action presents purely legal questions. Thus, to aid the Court in resolving this action as efficiently as possible, PhRMA suggested Defendants style their motion as one for summary judgment, which PhRMA would respond to with a cross-motion. Defendants refused, contending they would need discovery in connection with any summary judgment proceedings. Defendants thus filed their motion to dismiss, but they did not request a Rule 26(f) conference and never sought to conduct any discovery.

The Court granted the motion to dismiss on August 30, 2018, with leave to file an amended complaint. (ECF No. 37.) On September 28, 2018, PhRMA filed its First Amended

2

Complaint. (ECF No. 38.) OSHPD moved to dismiss the First Amended Complaint on October 24, 2018. (ECF No 43.) That motion was still pending in June 2019 when the deadline to file dispositive motions passed (*see* ECF No. 5 at p.4.), and in light of the State's pending dispositive motion, PhRMA determined that it would be inefficient to file a dispositive motion of its own at that time.

On July 31, 2019, the Court denied the State's motion to dismiss the First Amended Complaint (ECF No. 55). The Court held that Plaintiff made "non-conclusory allegations that: (1) SB 17 compels Plaintiff's members to speak when they would rather remain silent, contrary to the First Amendment; (2) SB 17's notice requirements improperly impact the nationwide WAC list prices of prescription drugs, contrary to the Commerce Clause; and (3) SB 17's language does not articulate, and California will not clarify, if the 'two previous calendar years' standard for WAC price increase notifications will be applied retroactively, contrary to the Fourteenth Amendment's Due Process Clause." *Id.* (citations omitted). On August 14, OSHPD filed its Answer. (ECF No. 56.)

Since receiving the Court's ruling, the parties have met and conferred at length about how this case should proceed. PhRMA has reiterated its position that the action can and should be resolved on a purely legal basis, and that proceeding to summary judgment immediately will be the most likely way "to secure the just, speedy, and inexpensive determination of [this] action." Fed. R. Civ. P. 1. To this end, PhRMA has articulated its intention to move for summary judgment immediately, without any discovery, on two claims that state purely legal questions and do not require any further factual development—namely the portion of Plaintiff's First Claim for Relief asserting that SB 17 directly regulates interstate commerce in *per se* violation of the dormant Commerce Clause, and Plaintiff's Second Claim for Relief asserting that SB 17 compels speech in violation of the First Amendment. Although it never sought to conduct any discovery, the State has remained steadfast in its position that discovery must be conducted first, before these claims can be resolved on summary judgment. However, when PhRMA asked the State to identify what discovery it contends it needs, the State was unable to identify any material facts requiring discovery.

Against this backdrop, Plaintiff accordingly requests that the Court set a summary judgment briefing schedule, as set forth in more detail below.

### B. Courts Regularly Treat Dormant Commerce Clause Cases as Purely Legal and Do Not Require Discovery Before Issuing Dispositive Rulings.

Under binding Ninth Circuit precedent, a *per se* facial challenge to a law under the dormant Commerce Clause, like Plaintiff's claim here, requires no fact discovery. In *Sam Francis Foundation v. Christies, Inc.*, 784 F.3d 1320 (9th Cir. 2015), for example, the defendants in a suit under California's Resale Royalty Act moved to dismiss on the basis that the Act facially violated the dormant Commerce Clause. *Id.* at 1322. The district court agreed and dismissed the case, and the Ninth Circuit affirmed, finding that the Act "facially regulate[d] a commercial transaction that takes place wholly outside of the State's borders" and was therefore invalid. *Id.* at 1323; *see also, e.g., Brown-Forman Distillers Corp. v. New York State Liquor Auth.*, 476 U.S. 573, 579 (1986) ("When a state statute directly regulates or discriminates against interstate commerce ... we have generally struck down the statute without further inquiry."); *Healy v. Beer Inst.*, 491 U.S. 324, 336 (1989) (a "statute that directly controls commerce occurring wholly outside the boundaries of a State exceeds the inherent limits of the enacting State's authority").

Here, there are no material facts in genuine dispute relevant to the question of whether SB 17 regulates commercial transactions outside California's borders and thus *per se* violates the dormant Commerce Clause. In its Answer, Defendant admits that a drug's wholesale acquisition cost (or "WAC") "is uniform across the United States." (Answer ¶ 26, ECF No. 56.) Defendant admits that SB 17 on its face requires pharmaceutical manufacturers to provide 60 days' advance notice before changing a drug's WAC. (Answer ¶ 3, ECF No. 56.) And Defendant admits "that several drug manufacturers have provided notices to purchasers as required by SB 17." (Answer ¶ 87, ECF No. 56.) Those undisputed material facts alone are sufficient to resolve Plaintiff's dormant Commerce Clause claim.

### C. Courts Also Resolve First Amendment Facial Challenges Without Discovery.

Nor are there any disputed material facts relevant to Plaintiff's First Amendment claim, which likewise challenges SB 17 on its face. (Am. Compl. ¶ 8, 68-82.) Courts determine the

4

critical threshold question in facial First Amendment challenges—whether a law is viewpoint- or content-based—based on the text of the statute alone. *See, e.g., Nat'l Inst. of Family & Life Advocates v. Becerra ("NIFLA")*, 138 S. Ct. 2361, 2371 (2018) ("The ... notice is a content-based regulation of speech. By compelling individuals to speak a particular message, such notices alter the content of their speech." (alterations omitted)); *Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2227 (2015) ("The Town's Sign Code is content based on its face."). A law that "on its face burdens disfavored speech by disfavored speakers" is presumptively unconstitutional. *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 564 (2011); *see also R.A.V. v. City of St. Paul, Minn.*, 505 U.S. 377, 382 (1992) ("Content-based regulations are presumptively invalid."). And no matter which standard of review applies, "the Government bears the burden of proving the constitutionality of its actions" under that standard. *United States v. Playboy Entertainment Grp., Inc.*, 529 U.S. 803, 816 (2000). As a result, courts recognize that discovery in facial First Amendment challenges is often unnecessary. In *Video Software Dealers Association v. Schwarzenegger*, No. 5:05-cv-04188 (N.D. Cal.), for example, the plaintiffs challenged a statute imposing labeling requirements and sale prohibitions on video games sold in California on First Amendment grounds. Following a preliminary injunction, the parties proposed (and the court granted) a scheduling order agreeing that there were no material factual disputes, and the case proceeded immediately to summary judgment. (*See id.*, ECF No. 69, at 1.) *See also, e.g., Barrett v. Walker Cty. Sch. Dist.*, 872 F.3d 1209, 1231 (11th Cir. 2017) ("[W]hen facial challenges raise only questions of law and do not implicate disputed facts, ruling on a facial challenge without waiting for the parties to complete discovery is entirely proper.").

This Court should adopt the same approach here. Defendant admits that SB 17 on its face compels speech—it requires pharmaceutical manufacturers "to give advance notice of certain increases in the WAC of their drugs, which notice 'shall include a statement regarding whether a change or improvement in the drug necessitates the price increase,' and that, '[i]f so, the manufacturer shall describe the change or improvement.'" (Answer ¶ 5 (quoting Cal. Health & Saf. Code § 127677(a)(c)(2)).) And public statements of SB 17's drafters make clear that a key aim of the disclosure requirement was to control nationwide drug prices, which is an

5

impermissible purpose (Am. Compl. ¶ 79), and to single out pharmaceutical manufacturers for disfavored treatment by making them "explain to the public why their drugs cost so much" (Am. Compl. ¶ 10; Answer ¶ 10). The text of SB 17 alone, particularly when paired with undisputed material facts about its purpose, is sufficient to resolve Plaintiff's First Amendment challenge.

### D. Given the Procedural Background and Nature of PhRMA's Claims, Setting a Summary Judgment Briefing Schedule is the Most Efficient Way to Proceed.

The procedural background of this action and relevant legal authorities together demonstrate that discovery is unnecessary and unwarranted, as it would usurp resources (both the parties' and the Court's) that are better focused elsewhere. "District courts have wide latitude in controlling discovery." *California ex rel. Cal Dep't of Toxic Substances Control v. Campbell*, 138 F.3d 772, 779 (9th Cir. 1998). And courts routinely postpone discovery when, as here, it would not "shed any different light on the undisputed facts central to th[e] case." *Stewart v. Evans*, 351 F.3d 1239, 1245 (D.C. Cir. 2003); *see also, e.g., Barrett*, 872 F.3d at 1231; *Williams v. Phillips Petroleum Co.*, 23 F.3d 930, 937 (5th Cir. 1994) (denying Rule 56(f) motion where case presented "pure issues of law and "no issues of fact that would require additional discovery"). A party seeking to delay summary judgment in order to conduct discovery "must show," among other requirements, that "the sought-after facts are *essential* to oppose summary judgment." *Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008) (emphasis added). "Failure to comply with [that] requirement[] 'is a proper ground for denying discovery and proceeding to summary judgment.'" *Id.* (quoting *Campbell*, 138 F.3d at 779). Allowing discovery where there are no material facts in dispute would only serve to harass Plaintiff and to waste the judicial resources necessary to resolve inevitable disputes that would arise during discovery. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 353 (1978) ("[D]iscovery should be denied when a party's aim is to delay bringing a case to trial, or embarrass or harass the person from whom he seeks discovery."). Permitting the State to engage in these tactics now would be all the more troubling, given that the State did not pursue this discovery during the pendency of its motion to dismiss. *Cf. Jackson v. Laureate, Inc.*, 186

F.R.D. 605, 607-608 (E.D. Cal. 1999) ("Rule 16's 'good cause' standard focuses on the diligence of the party seeking amendment.") (citation omitted).

In the parties' recent discussions about scheduling, Defendant has reiterated its view that fact discovery should precede any motion for summary judgment, but Defendant has not identified any fact in genuine dispute relevant to the two claims at issue. Instead, Defendant argues below that Plaintiff is not entitled to summary judgment on the merits—asserting, for example, that SB 17 does not in fact regulate interstate commerce. Such arguments are premature; the prudent course is to set a briefing schedule and to allow Defendant to make those arguments in a motion for summary judgment. If Defendant genuinely believes that discovery is necessary to oppose Plaintiff's summary judgment motion (which it is not), Defendant can specify and seek any such discovery through submission of an affidavit under Rule 56(f). Defendant's proposal to commence discovery now, before Plaintiff files its summary judgment motion, would be inefficient for the parties and the Court, and would serve only to delay this action, which was filed in 2017. Plaintiff's proposal to brief summary judgment on two purely legal claims that require no factual development, by contrast, will lead to judicial efficiency and reduced costs. *See generally* Fed. R. Civ. P. 1.

Contrary to Defendant's assertion, Plaintiff is not seeking a "protective order" to "stay" discovery, but rather requests a schedule to brief summary judgment on claims that do not require any fact discovery. The question of whether any discovery is necessary can and should be resolved at the threshold pursuant to this Court's power to "control[] discovery." *Campbell*, 138 F.3d at 779. In any event, Plaintiff would be entitled to a stay pending resolution of its motion for summary judgment. Plaintiff's motion will be "dispositive of the entire case" and, as explained above, all claims raised in the motion will be capable of being "decided absent additional discovery." *Cty. of Sutter*, 2012 WL 94618, at *2.

To resolve this case efficiently and expeditiously, Plaintiff proposes that the Court enter a scheduling order directing the parties to brief Plaintiff's summary judgment motion regarding the two claims identified above:

7

| Filing(s) | Date |
|---|---|
| Plaintiff's Motion for Summary Judgment | [30 days from the date on which the Court enters a scheduling order] |
| Defendant's Response to Plaintiffs Motion for Summary Judgment (including any affidavit or declaration under Rule 56(d)) and any Counter-Motion for Summary Judgment | [+ 30 days] |
| Plaintiff's Reply in Support of Motion for Summary Judgment and Response to any Counter-Motion for Summary Judgment | [+ 15 days] |
| Defendant's Reply in Support of any Counter-Motion for Summary Judgment | [+ 15 days] |

**DEFENDANT OSHPD'S POSITION**

Defendant OSHPD believes that the Court should reset the pretrial dates contained in the Initial Pretrial Scheduling Order, including a new deadline for the parties to meet and confer as required by Rule 26(f) of the Federal Rules of Civil Procedure, so that OSHPD may commence discovery. *See* Fed. R. Civ. Proc. 26 (d)(1) (absent stipulation, court order or other authorization, "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)"). At this stage, before there has been any opportunity for discovery, PhRMA's planned motion for summary judgment is premature.

A. **The Court Should Reject PhRMA's De Facto Motion for Stay of Discovery.**

Notwithstanding PhRMA's assertion that it "is not seeking a 'protective order' to 'stay' discovery," that is precisely what PhRMA's proposed schedule would achieve. It effectively would stay discovery indefinitely. It would require OSHPD to respond to Plaintiff's planned motion for summary judgment without the benefit of discovery, and place on OSHPD the burden to affirmatively make a showing under Federal Rule of Civil Procedure 56(d) in order to obtain any discovery.

Plaintiff in effect is seeking a protective order staying discovery without following the correct procedure for discovery disputes under this Court's Local Rules, including bringing a noticed motion before Magistrate Judge Newman. *Mlejnecky v. Olympus Imaging Am., Inc.*, Civ.

No. 2:10-cv-02630, 2011 WL 489743, at *5 (E.D. Cal. Feb. 7, 2011) (J. Newman) (holding that seeking a protective order is the proper vehicle for seeking to stay discovery pending resolution of a pending motion to dismiss). *See also* Initial Pretrial Scheduling Order at 2 & n.2, Local Rule 251.

In addition, PhRMA's de facto motion for protective order denying discovery necessarily fails on the merits. OSHPD is presumptively entitled to obtain discovery. Fed. R. Civ. Proc. 26(b); *Mlejecky v. Olympus Imaging Am., Inc.*, 2011 WL 489743, at *4. While the Court has broad discretion to issue protective orders denying discovery, the party seeking the protective order must show good cause. *Estate of Bock v. Cty. of Sutter*, Civ. No. S-11-0536 MCE GGH, 2012 WL 94618, at *1 (E.D. Cal. Jan. 9, 2012). That imposes on the moving party "the burden to demonstrate particular and specific demonstrations of fact, as distinguished from conclusory statements." *Id.* (internal quotations marks and citations omitted); *see Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992). The Eastern District of California employs a two part analysis in deciding whether to stay discovery pending a decision on a dispositive motion:

> First, *a pending motion* must be potentially dispositive of the entire case, or at least dispositive on the issue at which discovery is directed. *Panola Land Buyer's Ass'n v. Shuman*, 762 F.2d 1550, 1560 (11th Cir. 1985). . . .
>
> Second, the court must determine whether the *pending dispositive motion* can be decided absent additional discovery. *See, e.g., Church of Scientology of San Francisco v. Internal Revenue Service*, 991 F.2d 560, 563 (9th Cir. 1993), vacated in part on other grounds, 30 F.3d 101 (9th Cir. 1994). If the court answers these two questions in the affirmative, a protective order may issue. However, if either prong of this test is negative, discovery proceeds.

*Estate of Bock v. Cty. of Sutter*, 2012 WL 94618, at *2 (emphasis added); *Accord Mlejecky v. Olympus Imaging Am., Inc.*, 2011 WL 489743, at *6. This analysis presupposes the existence of a pending motion.

None of PhRMA's cited cases stand for the proposition that a court should stay discovery to allow one party to bring a motion for summary judgment because that party believes that there are no disputed material facts. For example, in *Barrett v. Walker Cty. Sch. Dist.*, 872 F.3d 1209,

1218 (11th Cir. 2017), the parties had jointly requested a stay of discovery. While the stay of discovery was pending, plaintiff filled a motion for partial summary judgment, in response to which defendant requested that its response time be extended to thirty days after close of discovery. In the context of that pending motion, the trial court declined defendant's request but limited its inquiry to plaintiff's facial challenge to the statute. *Id.* at 1219. Although the Court of Appeal held that the trial court had not abused its discretion in the circumstances of that case, it acknowledged that "there are reasons to be wary of prematurely adjudicating facial challenges." *Id.* at 1231. *Williams v. Phillips Petroleum Co.*, 23 F.3d 930 (5th Cir. 1994), involved a motion under (then) Rule 56(f), not a preemptive motion to stay discovery.[1] *Family Home & Finance Center v. Federal Home Loan Mortgage Corp.*, 525 F.3d 822, 825, also involved a Rule 56(f) motion and was denied in part because plaintiff "failed to file timely motions to compel discovery or extend the discovery cutoff date."[2]

PhRMA's arguments based on *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340 (1979), and *Jackson v. Laureate Inc.*, 186 F.R.D. 605, 607-08 (E.D. Cal. 1999), are likewise meritless. The fact that the parties here did not hold a Rule 26(f) conference and commence discovery while OSHPD's motions to dismiss were pending, although in technical violation of the Court's prior scheduling order, was understandable, since if the motion had been granted no discovery would be needed. That fact does not support an inference, as PhRMA suggests, that OSHPD's "aim is to delay bringing [the] case to trial, or to embarrass to harass [PhRMA]." After all, PhRMA is the plaintiff here, and similarly took no steps to advance this case while the motions to dismiss were pending.[3] Whatever lack of diligence exists here, *see Jackson v. Laureate*, 186 F.R.D. at 606-07, the fault falls equally on PhRMA.

---

[1] The court denied the request for discovery because plaintiffs had released their claims and because the basic requirement for triggering liability under the statute at issue (number of employees and number of employees laid off at a single work site) were not in dispute. *Williams v. Phillips Petroleum Co.*, 23 F.3d at 937.

[2] PhRMA also cites to a case management statement in *Video Software Dealers Association v. Schwarzenegger*, No. 5:05-cv-04188 (N.D. Cal), in which the parties had *agreed* that there were no disputed factual issues.

[3] Just as OSHPD is seeking to reset the discovery deadlines, PhRMA is seeking to reset the dispositive motions deadline, which has also passed.

## B. This Case Is Unlikely to Be Resolved on the Basis of Purely Legal Issues.

As PhRMA notes, the parties are in fundamental disagreement over whether this case can be resolved on the basis of purely legal issues. PhRMA has stated, however, that it does not intend to bring a motion for judgment on the pleadings, but instead a motion for summary judgment. It therefore is not limiting itself to the pleadings and matters subject to judicial notice. While it is difficult—and indeed unfair—to require OPS to anticipate a motion which has yet to be filed, both PhRMA's First Amendment and dormant Commerce Clause Claims likely will depend on disputed issues of fact.

### 1. PhRMA's First Amendment Claim Implicates Factual Issues.

OSHPD respectfully disagrees with PhRMA's contention that its First Amendment Claim can be determined as a purely legal issue.

SB 17 requires that drug manufactures provide advance notice to its California purchasers of the amount by which it intends to increase the WAC for certain of its drugs, and whether or not the increase is due to an improvement or change in that drug. Cal. Health & Saf. Code § 127677(a).[4] It is up to the drug maker to determine whether its increased WAC is or is not necessitated by a change or improvement in its drug, and nothing in SB 17 prohibits the drug maker from adding in its notice any other explanation or context it desires. *See id.* § 127677(a), (b).

In *Zauderer v. Office of Disciplinary Counsel of Supreme Court*, 471 U.S. 626, 650-651 (1985), the Supreme Court upheld against a First Amendment challenge a statute that required contingent fee attorneys to disclose in advertising that clients will have to pay costs even if their lawsuits are unsuccessful. The Court held that the lawyer's "constitutionally protected interest in *not* providing factual information . . . is minimal," and where a required disclosure was "purely factual and uncontroversial," the speaker's First Amendment rights were adequately protected as

---

[4] It also must report to OSHPD certain *publicly available* information concerning any increase in the WAC described in section 127677. *Id.*, § 127679(a), (b). It is not clear on what conceivable basis PhRMA could contend this requirement violates the First Amendment. (See ECF No. 38 ¶ 70.)

long as the disclosure requirements are reasonably related to the State's interest." *Id.* at 651. The Court in *National Institute of Family & Life Advocates v. Becerra*, 138 S. Ct. 2361, 2372 (2018)("*NIFLA*"), reaffirmed this principle, but held that it did not apply to a statute requiring pro-life pregnancy centers to disclose the availability of state programs that provide low-cost or free services including abortion services, because the topic was not "uncontroversial."

The Ninth Circuit recently applied *Zauderer* and *NIFLA* in upholding a Berkeley ordinance requiring that cell phone packaging contain disclosures relating to radiation exposure. *CTIA-The Wireless Association v. City of Berkeley*, 928 F.3d 832 (9th Cir. 2019). The Court rejected plaintiff's argument that the mandated disclosure was not uncontroversial, and in so doing observed that

> CTIA has put nothing in the record showing that any Berkeley cell phone retailer has felt pressured, or has sought to take advantage of the provision of the ordinance allowing it to make any additional disclosure it desires. *See also Milavetz* [*Gallop & Milavetz, P.A. v. United States*, 559 U.S. 229, 250 (2010)] ("not preventing ... [the] convey[ance] of any additional information" is one of the essential features of a disclosure)."

*Id.* at 852. Here, the required disclosure is indisputably factual – indeed the drug makers decide what the facts are. And as the Ninth Circuit held in *CTIA*, the fact that the disclosure is one the speaker does not want to make does not render it "controversial" within the meaning of *Zauderer*. *Id.* at 847-48. That is a factual issue as to which discovery should be allowed.

### 2. PhRMA's Dormant Commerce Clause Claim Implicates Factual Issues.

OSHPD similarly takes issue with PhRMA's assumption that its dormant Commerce Clause claim can be resolved in PhRMA's favor as a purely legal issue. In the absence of a statute that plainly discriminates against out-of-staters (*see New Energy Co. v. Limbach*, 486 U.S. 269 (1988)), "there is no clear line separating the category of state regulation that is virtually *per se* invalid under the Commerce Clause, and the category subject to the *Pike v. Bruce Church* [, 397 U.S. 137 (1970)] balancing approach." *Brown-Forman Distillers Corp. v. N.Y State Liquor Auth.*, 476 U.S. 573, 579 (1986). *See Chinatown Neighborhood Ass'n v. Harris*, 794 F.3d 1136 (9th Cir. 2015.)

Moreover, PhRMA's proposal assumes a facial challenge to the statute, which is "the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739 (1987). Facial challenges are disfavored, and for good reason. *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450 (2008).

> Claims of facial invalidity often rest on speculation. As a consequence, they raise the risk of premature interpretation of statutes on the basis of factually barebones records. Facial challenges also run contrary to the fundamental principle of judicial restraint that courts should neither anticipate a question of constitutional law in advance of the necessity of deciding it nor formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied. Finally, facial challenges threaten to short circuit the democratic process by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution. We must keep in mind that a ruling of unconstitutionality frustrates the intent of the elected representatives of the people.

*Id.* at 450-51 (internal quotation marks and citations omitted). PhRMA's attempt to resolve this case as a facial challenge at this early stage should be rejected.

Further, a facial challenge to SB 17 is likely to fail, and staying discovery to allow it ultimately will delay resolution of this case. The purpose of the dormant Commerce Clause is "to prohibit protectionist state regulation designed to benefit in-state economic interests by burdening out of state competitors." *Grant's Dairy – Maine LLC v. Comm'r of Me. Dept. of Agric., Food & Rural Resources*, 232 F.3d 8 (1st Cir. 2000). Statues that may be subject to virtual *per se* invalidity are limited to "those that directly burden interstate commerce or otherwise discriminate against out-of-state interests." *Pac. Merch. Shipping Ass'n v. Goldstene*, 639 F.3d 1154, 1177 (9th Cir. 2011). SB 17 patently does not discriminate against out-of-state interests to the advantage of local interests. Instead, PhRMA claims that SB 17 directly regulates interstate commerce. For purposes of this analysis, "the term 'direct' [refers] to regulations whose *central purpose* is to regulate commerce, usually in order to benefit local interests." *Pac. Merch. Shipping Ass'n v. Goldstene*, 639 F.3d 1154, 1177-78 (quoting *UFO Chuting of Haw., Inc. v. Smith*, 508 F.3d 1189 (9th Cir. 2007). The central purpose of SB 17 is not to regulate commerce, but simply to provide transparency.

Nor does SB 17 fall within the narrow authority applying to price affirmation statutes, which requires three elements: "(1) a price control or price affirmation regulation, (2) linking in-state prices to those charged elsewhere, with (3) the effect of raising costs for out-of-state consumers or rival businesses." *Energy & Env't Legal Inst. v. Epel*, 793 F.3d 1169, 1172 (10th Cir. 2015) (J. Gorsuch). *See Ass'n des Eleveurs de Canards et d'Oies v. Harris*, 729 F.3d 937, 951; *Chinatown Neighborhood Ass'n v. Harris*, 794 F.3d at 1146. All three elements should be required before a virtual *per se* violation is found, but none are present here. To even begin to make a showing, PhRMA would have to prove that SB 17's advance notice requirement is in fact a price control. That showing cannot be made in a factual vacuum.

The WAC is a generic list price, and does not include "prompt pay or other discounts, rebates or reductions in price" that would affect the actual price paid by any particular purchaser. (42 U.S.C. § 1395w-3a(c)(6)(B).) It is simply one of several benchmarks. *See* 42 U.S.C. §§ 1395w-3a(c), 1395w-3a(c)(6)(B), 1396r-8(f), 1395r-8(k)(1). Indeed, in its amended Complaint PhRMA concedes that the WAC is not the actual price of any drug. (See ECF No. 38 ¶¶ 26-34.) The legislative history for SB 17 explains:

> Price Benchmarks. Knowing how much a drug costs is difficult; there are many different prices for each drug and different ways of expressing those prices. In the US, the two most common ways of stating drug prices are the WAC and average wholesale price (AWP). Neither one, though, is the actual price paid by a payer, nor are they what their names imply. Rather, they're standardized ways of expressing a price, thus allowing comparisons to be made from one drug to another. . . .

Cal. S. Comm. on Health, Report on S.B. 17, Health Care: Prescription Drug Costs 6 (March 14, 2017). *See* Lieberman & Ginsberg, Would Price Transparency for Generic Drugs Lower Costs for Payers and Patients? (June 2017) Brookings Institution, available at (noting that "published lists prices like AWP and WAC neither reflect the actual net revenue paid to manufacturers not the actual net prices paid by pharmacies . . . and health plans"). It cannot be determined based on the face of the statute to what extent an advance notice requirement for a change in the WAC actually translates to an impact on any actual price paid for a drug. Thus, whether SB 17 can be found to impose an undue burden on interstate commerce is a fact-laden inquiry as to which OSHPD should be entitled to discovery. Information concerning, inter alia, the contracts under

14

which PhRMA's members sell their drugs, the typical lead time for effecting changes in the WAC and in those contract prices, and the extent to which, if at all, PhRMA's members' drug sales may be impacted by SB 17, is plainly relevant, and is discovery to which OSHPD is entitled.

Moreover, even legislation that is "invalid *per se*" will be upheld if "the state can demonstrate that a legitimate local interest unrelated to economic protection is served by the regulation and no less discriminatory alternative exists." *Kleenwell Biohazard Waste & Gen. Ecol. Consultants, Inc.*, 48 F.3d 391, 395 (9th Cir. 1995); *see Energy & Environ. Legal Inst. v. Epel*, 793 F.3d at 1172. That, too, is not a purely legal issue susceptible to resolution on a motion for summary judgment at this early stage.

SB 17 represents a novel legislative approach to a serious problem, and one that resists easy analysis. *See Pharm. Research & Mfrs. of Am. v. Concannon*, 249 F.3d at 81. It warrants review based on a full record, and not the rush to judgment PhRMA advocates.

### C. OSHPD's Position Regarding Scheduling.

OSHPD proposes the following modified pretrial schedule, with all other provisions and directions set forth in the Initial Pretrial Scheduling Order to remain unchanged:

| | |
|---|---|
| Parties to meet and confer as required by Rule 26(f) | Thirty (30) days from the date of the Modified Pretrial Scheduling Order |
| All discovery except expert discovery to be completed | Three hundred sixty-five (365) days from the date of the Modified Pretrial Scheduling Order |
| Designation of expert witnesses and written expert reports | Sixty (60) days after close of discovery |
| Designation of supplemental list of expert witnesses | Thirty (30) days after designation of expert witnesses |
| Deadline for filing dispositive motions | One hundred eighty (180) days after close of non-expert discovery |
| Joint Notice of Trial Readiness | Thirty (30) days after receiving the Court's ruling on the last filed dispositive motion(s) |

At such time as dispositive motions may be filed, OSHPD agrees that the parties should agree to a briefing schedule that gives the parties more time than the minimum provided for under

15

the Local Rules. If, notwithstanding OSHPD's objection, the Court enters a scheduling order for briefing on PhRMA's proposed motion for summary judgment now, OSHPD respectfully requests that it be given forty-five (45) days to respond to PhRMA's motion. PhRMA has already had several weeks to prepare its motion, to which it proposes that it be given an additional 30 days. OSHPD will not only have to prepare its opposition in response, but anticipates that it will have to prepare a Rule 56(d) motion. Moreover, depending on the timing of the Court's scheduling order, OSHPD's time to file its opposition is likely to span the Thanksgiving holiday, and possibly the end of the year holiday season. Counsel for OSHPD has vacation scheduled for November 23 through December 2, 2019 and December 23, 2019 through January 3, 2020.

Dated: October 1, 2019

Respectfully submitted,

XAVIER BECERRA
Attorney General of California
PAUL STEIN
Supervising Deputy Attorney General
SHARON O'GRADY, State Bar No. 102356
Deputy Attorney General

/s/ Sharon L. O'Grady
(as authorized on 10/1/19)
SHARON L. O'GRADY
Deputy Attorney General
*Attorneys for Defendant Robert P. David, Director of California Office of Statewide Health Planning and Development*

Dated: October 1, 2019

DOWNEY BRAND LLP

/s/ Annie S. Amaral
ANNIE S. AMARAL

*Attorneys for Plaintiff Pharmaceutical Research and Manufacturers of America*

SA2017109671